## WRIGHT v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 13, 1915.)

No. 4318.

*(Syllabus by the Court.)*

CRIMINAL LAW ⬅308, 562—INDIANS ⬅38—INTOXICATING LIQUORS—PRESUMPTION OF INNOCENCE.

There is a legal presumption that a defendant is innocent in a criminal case until he is proved to be guilty beyond a reasonable doubt. The burden is upon the government to make this proof, and evidence that is as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and when all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction. The record considered, and *held* to contain no substantial evidence of the guilt of the defendant below.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 731, 1253, 1263; Dec. Dig. ⬅308, 562; Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. ⬅38.]

Carland, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Arch Wright was convicted of introducing liquor into the Eastern district of Oklahoma and brings error. Reversed and remanded, with directions to grant a new trial.

Norman R. Haskell, of Oklahoma City, Okl. (W. J. Crump and G. J. Crump, both of Muskogee, Okl., and E. G. McAdams, of Oklahoma City, Okl., on the brief), for plaintiff in error.

W. P. McGinnis, Asst. U. S. Atty., of Muskogee, Okl. (D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. The plaintiff in error was indicted for introducing intoxicating liquor into the Eastern district of Oklahoma, into the county of Muskogee in that district, which the indictment alleged had been a part of the Indian Territory and was a portion of the Indian country of the United States, from without the Indian country, from without the said district, and from without the said state of Oklahoma. The indictment seems, therefore, to charge in a single count the introduction of intoxicating liquor from without the state of Oklahoma into that part of the state which was formerly the Indian Territory, in violation of section 8 of the Act of March 1, 1895 (28 Stat. 693), and the introduction of intoxicating liquor into the Indian Territory in violation of the Act of January 30, 1897, 29 Stat. 506 (Comp. St. 1913, § 4137), two distinct offenses. Ammerman v. United States, 216 Fed. 326, 132 C. C. A. 470; Allison v. United States, 216 Fed. 329, 132 C. C. A. 473. The defendant did not demur

to the indictment, but pleaded not guilty; then at the opening of the trial moved for leave to withdraw his plea and to demur, a motion which was denied; and then objected to any evidence on the ground that the indictment was duplicitous, but his objection was overruled. At the close of all the evidence he made a motion for a peremptory instruction in his favor, which was denied, and the court instructed the jury that there was no evidence that the portion of Muskogee county where the liquor was found was or is Indian country, that they must not find the defendant guilty of a violation of the Act of January 30, 1897, but that they might consider and find whether or not he was guilty of a violation of the Act of March 1, 1895. These and many other rulings of the court at the trial of this case are assigned as error; but it is necessary to consider but one of them in order to dispose of it, and that is whether or not the request for a peremptory instruction should have been given.

There was evidence, much of which is challenged as incompetent, a challenge we do not stop to determine, and do not admit or deny the soundness of, that Petroleum is a railway station in Oklahoma, about three miles from Muskogee; that some unknown person presented to the cashier of the railroad company at Ft. Smith, Ark., a bill of lading of M., K. & T. car No. 72837, which appeared from the bill of lading to be loaded with cotton seed hulls and to be shipped by the Ft. Smith Cotton Oil Company to W. D. Todd, at Petroleum; that the cashier accepted prepayment of the freight and billed the car to Petroleum, where it arrived on July 12, 1912, at about 8 p. m.; that an hour or two after dark on that day men with teams arrived at Petroleum, took intoxicating liquor from the car, and hauled it toward Muskogee; and that on the way the sheriff of Muskogee county captured the liquor. There was no direct evidence that Wright, the defendant below, owned the liquor, that he had ordered or requested its introduction into Oklahoma, or that he had directed, superintended, or was in any way interested in unloading or hauling it into Muskogee. He testified that, at the time the car was unloaded and the liquor was drawn towards Muskogee, he was at his residence in that city with W. L. Stokes, another witness, who testified that he was at Wright's house discussing a matter of business with him at that time. Wright further testified that he had nothing to do with introducing the liquor, that he was not interested in it, that he did not go out to the car that night, and did not pass Ed. Mahoney, a deputy sheriff, who testified that as he was going out to the car that night he met Wright on the road, walking towards Muskogee, and he said, "Is anything doing down there?" and Mahoney answered, "Hello, Arch."

The only evidence there is in the record from which a suspicion might possibly arise that Wright was in any way interested in the introduction of the liquor is this: Hewett testified that while the men were unloading the car there was a medium sized man, whom he did not know, dressed in a dark blue suit of clothes, wearing a straw hat, sitting in a buggy about 50 feet from the car, and that when the light flashed up the lane he left the buggy and went out across the field. Ed. Mahoney testified that, as he was riding from Muskogee toward Petroleum, he met Wright walking towards Muskogee; that he was

dressed in a light-colored suit of clothes, and was wearing a straw hat; that he knew Wright; that he was engaged in running joints; that joints were whisky and gambling; that after Wright was indicted he took Mahoney into the sheriff's office and asked the sheriff if he expected to work with the government, and asked Mahoney why he was so anxious to go before the grand jury and to file this case against him; and that at another time later Wright asked him about what his testimony would be, whether or not he was sure the man he met on the road was Wright, how far he was from him, and what he said. But was this substantial evidence that Wright introduced or caused the introduction of the liquor unloaded from the car from without the state of Oklahoma into the part of that state which was formerly the Indian Territory?

Conceding the truth of this testimony for the government, it discloses no act or word of Wright tending to show that he introduced or caused the introduction of the liquor from Arkansas into Oklahoma. The legal presumption was that he was innocent of that crime until he was proved to be guilty beyond a reasonable doubt. The burden was upon the government to make this proof, and evidence that is as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction. Union Pacific Coal Co. v. United States, 173 Fed. 737, 740, 97 C. C. A. 578, 581; Vernon v. United States, 146 Fed. 121, 123, 124, 76 C. C. A. 547, 549, 550; United States v. Richards (D. C.) 149 Fed. 443, 454; Hayes v. United States, 169 Fed. 101, 103, 94 C. C. A. 449, 451; United States v. Hart (D. C.) 78 Fed. 868, 873; Hart v. United States, 84 Fed. 799, 28 C. C. A. 612; United States v. McKenzie (D. C.) 35 Fed. 826, 827, 828; People v. Ward, 105 Cal. 335, 341, 38 Pac. 945; People v. Murray, 41 Cal. 66, 67; State v. Hunter, 50 Kan. 302, 32 Pac. 37; Bradshaw v. State, 17 Neb. 147, 22 N. W. 361, 366.

The government proved that an unknown man at Ft. Smith, Ark., prepaid the freight on the carload of liquor and caused it to be billed and sent from Arkansas into Oklahoma. It produced no evidence that this unknown man was Wright, or that he acted by Wright's order, direction, or procurement; and as there were many other men than Wright, while he is but one, the fact that this unknown man caused the introduction is much more consistent with Wright's innocence than with his guilt. The man whom Hewett saw in the buggy at Petroleum was wearing a dark blue suit of clothes and a straw hat; Wright, whom Mahoney met walking towards Muskogee, was wearing a light-colored suit of clothes and a straw hat; and the fact that the man in the buggy was not Wright is more consistent with this testimony than the hypothesis that he was. The fact that Wright was walking along the road toward his home in the evening of the day when the liquor was captured is much more consistent with the hypothesis that he did not cause the liquor to be introduced from Arkansas into Oklahoma, and the unknown man did, than it is with the hypothesis that Wright

caused its introduction. The fact that he ran joints is at least as consistent with his innocence as with his guilt, for there were doubtless more men engaged in running joints in Muskogee, who did not introduce the liquor in the car in question into Oklahoma, than there were who did. And the conversations Wright had with the sheriff and Mahoney after he was indicted were as consistent with his innocence as with his guilt. Innocent men are not less anxious than guilty ones to learn before their trial what evidence and what influence is to be brought to convict them, and they may not be lawfully deterred from endeavoring to ascertain by a rule that such endeavors constitute proof of their guilt beyond a reasonable doubt. There was no substantial evidence in this case which was not as consistent with the innocence as with the guilt of the defendant below, and his request for a peremptory instruction in his favor should have been granted.

The judgment below must therefore be reversed, and the case must be remanded to the court below with instructions to grant a new trial; and it is so ordered.

CARLAND, Circuit Judge. I concur in the result, but for reasons stated in my dissent in No. 4279, Isbell v. United States, 227 Fed. 788, —— C. C. A. ——, I dissent from the use of the language used in the opinion in the case mentioned.

⬢For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes