## KASSIN v. UNITED STATES.
### No. 8044.

Circuit Court of Appeals, Fifth Circuit.
Jan. 5, 1937.

Rehearing Denied Jan. 30, 1937.

David Gertler and Ellis C. Irwin, both of New Orleans, La., and Francis L. Poor and H. M. Wise, both of Jacksonville, Fla., for appellant.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Wm. A. Paisley, Asst. U. S. Atty., of Jacksonville, Fla.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant was jointly indicted with seven others, upon eighteen counts. One count charged conspiracy to misapply funds and falsify records of the Florida National Bank of Jacksonville. The other seventeen charged various particular misapplications and falsifications. When the indictment was called for trial against appellant, five of those named with him had already pleaded or been found guilty and sentenced. The other two had not been apprehended. The trial, therefore, proceeded against appellant alone. Convicted on all of the counts, and sentenced to serve ten years in the Atlanta Penitentiary, he appeals, insisting that the record is devoid of evidence tending to convict him, and that he should have had the directed verdict he moved for.

■ He assigns error, too, to this argument of the district attorney: "The Government of the United States is trying to convict this man, and on this undisputed evidence we are entitled to have twelve reasonable men believe he was a member of this gang and if it was the act of one it was the act of all. If he had any legitimate business down here, gentlemen, God knows we are entitled to have him explain to you twelve men here * * * not him—but by other witnesses."

Because we agree with appellant that the conviction may not stand for want of evidence, we find it unnecessary to decide whether the argument, unsound in law and in fact as it was, constituted prejudicial error.

■ It was of a piece with the whole theory of the prosecution, that proof that his codefendants were guilty; that, using assumed names, appellant had registered at hotels in Florida where some of his codefendants were registered; and that he had a safety deposit box in a bank where some of his codefendants had boxes, had put him upon proof of his innocence. This will not do. Wide-sweeping and damaging as is a charge of conspiracy, difficult as it is for one caught in the net of such a charge to extricate himself from it when the government has any evidence tending to connect him with it, such a charge, no less than charges of substantive offenses, requires proof. This proof may be circumstantial or direct, or both, but it must be proof. That is, the evidence must have a legitimate tendency to compel belief in and a finding of defendant's guilt. It may not consist merely of circumstances having such remote relation to the facts to be proved as that they have not a probable, but only a possible, relevancy. Circumstantial evidence can indeed forge a chain of guilt and draw it so tightly around an accused as almost to compel the inference of guilt as matter of law. Again, circumstantial evidence may forge the chain and draw it tight by legally justifiable, rather than absolutely compelling, inferences. In each case, however, where the evidence is purely circumstantial, the links in the chain must be clearly proven, and taken together must point not to the possibility or probability, but to the moral certainty of guilt. That is, the inferences which may reasonably be drawn from them as a whole must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. Paddock v. United States (C. C.A.) 79 F.(2d) 872; De Luca v. United States (C.C.A.) 298 F. 412; Wright v. United States (C.C.A.) 227 F. 855, 857. This rule applies with the same force where conspiracy is the charge, as where substantive offenses are in question. Conspiracy does indeed widen the scope of relevant evidence through the operation of the principle of agency or representation by which all are made responsible for the acts of each of the partners in crime. This, however, is not a breakdown, it is merely an application of the rules of evidence. Conspiracy charges do not present opportunities for departure from, they present merely specific instances for the application of, the rules governing the problem of judicial proof. McLaughlin v. United States (C.C.A.) 26 F.(2d) 1; Dahly v. United States (C.C.A.) 50 F.(2d) 37; Underhill on Evidence, § 775.

■ One of the prime rules in the trial of criminal cases is that circumstances, when relevant and cogent, may constitute evidence of guilt, but they must have a legal, as well as logical, relevancy, and they must have probative force; that is, they must point with compelling force to the fact to be proven. Circumstances which merely raise suspicion or give room for conjecture are not sufficient evidence of guilt. Whar-

ton on Evidence, p. 1532. A conviction resting on them alone cannot stand. Gathered up from the record through which they are scattered, this is a complete list of the circumstances relied on.

 For a part of the time while the conspiracy was going forward appellant was registered under assumed names at three hotels in Florida, the George Washington Hotel, in Jacksonville, the Monson, in St. Augustine, and the Casa Marina, at Jacksonville Beach, where for a part of the time, but in different rooms, some of the codefendants were also registered. At or about the same time appellant, under an assumed name, had a safety deposit box in the St. Augustine National Bank, at St. Augustine, Fla., and three of his codefendants had boxes at the same bank also under assumed names. There was testimony that in New York, in 1924, Kassin had been interrogated about, and had admitted knowing, Seeman. There was the testimony of the custodian of the bank vault that he once saw appellant and Goldberg, one of his codefendants, come into the bank together. He did not see them speak to each other, though they walked down the floor side by side. Kassin went into the vault where the safety boxes were; Goldberg did not. Babcock, clerk at the George Washington Hotel, testified that at one time he saw appellant in the lobby of the hotel at the same time that some of his codefendants were there. Neither he nor the clerks at any of the other hotels ever saw appellant walking or associating with any of his codefendants. No other evidence was offered to connect appellant with the crime. Some of his convicted codefendants were placed upon the stand by the government to identify him. None of them did so. All swore that they did not know him.

Examining and appraising these circumstances, individually and together, by the rules governing criminal trials, we find them wholly wanting in probative relevancy and force. Appellant's being in Florida and registering under assumed names standing alone had neither logical nor legal relevancy to the charge for which he was on trial. He may have had any number of reasons for his presence in Florida, and for his conduct there. His taking out of a deposit box in the bank in Florida, still under an assumed name, by itself had absolutely no tendency to prove his guilt. Relevancy is not supplied,

probative force is not given to these circumstances by the additional proof that some of those charged with him had deposit boxes in the same bank, and some of them were registered at the same hotels at which he registered at or about the same time. If, in addition to these, there had been circumstances tending to prove that appellant not only knew his codefendants, but was associated with them in some common enterprise, this, though meager, might possibly have sufficed as a basis for drawing the inference that they were joined in the particular criminal enterprise on trial. But no one connected or identified appellant as in any way in concert with these defendants, much less with the criminal business in which they were engaged. Except for the testimony to Kassin's admission in 1924 that he then knew Seeman, no one swore that or to any fact having a legal tendency to prove that appellant knew, or had ever known, any of his codefendants. The record standing thus, the government was forced for want of evidence to connect appellant with the crime, to take the position it did in the argument, that an inference from appellant's failure to explain his presence in Florida could be looked to to supply the missing circumstances needed to save from irrelevancy and to give probative value and effect to those they had offered. This will not do. Gerson v. United States (C.C.A.) 25 F.(2d) 49.

Defendant's motion for an instructed verdict should have been granted. The judgment is reversed, and the cause is remanded for further and not inconsistent proceedings.