## MORGAN, Warden of U. S. Penitentiary, v. WARD et al.

(Circuit Court of Appeals, Eighth Circuit. May 17, 1915.)

No. 4282.

1. HABEAS CORPUS ⟝30—GROUNDS OF REMEDY—WRIT OF ERROR.

Where an indictment was bad, the petitioners, having opportunity to challenge it in the lower court and if necessary by writ of error from the Circuit Court of Appeals, whether they availed themselves of such opportunity or not, could not use the writ of habeas corpus for the purpose of a writ of error.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. ⟝30.]

2. INDIANS ⟝38—INTOXICATING LIQUORS—AMENDMENT AND REPEAL—PENALTY—"INDIAN COUNTRY."

Act July 23, 1892, c. 234, 27 Stat. 260, prohibited the introduction of intoxicating liquors into the Indian country, and fixed the penalty at imprisonment for not more than two years and a fine of not more than $300. Act Jan. 30, 1897, c. 109, 29 Stat. 506 (Comp. St. 1913, § 4137), prohibited the introduction of intoxicating liquors into the Indian country and specifically provided that the term "Indian country" should include any allotment while the title thereto was held in trust or was inalienable without the consent of the government, under penalty of a fine, and imprisonment for not less than 60 days, specifying no maximum limit of imprisonment, and by section 2 thereof repealed so much of the former act as was inconsistent therewith. Held, that the later act was an amendment of the former act, that the introduction of intoxicating liquors into an Indian allotment was an introduction into Indian country not intended to create any new offense as to such allotments, and that the maximum penalty provision of the former act was not inconsistent with the penalty provision of

the later act, so that a sentence of two years upon conviction under the later act was valid.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66; Dec. Dig. ☞38.

For other definitions, see Words and Phrases, First and Second Series, Indian Country.

Introducing intoxicating liquors into Indian country, see note to Joplin Mercantile Co. v. United States, 131 C. C. A. 171.]

3. COURTS ☞405—UNITED STATES COURTS—JURISDICTION—CIRCUIT COURT OF APPEALS.

Where it was contended on appeal from habeas corpus proceedings discharging from imprisonment for introducing liquor into an Indian allotment, that the jurisdiction of the trial court was in issue, and that the case involved the construction of the Constitution of the United States within the Judiciary Act of 1891 (Judicial Code, §§ 236, 238 [Act March 3, 1911, c. 231, 36 Stat. 1156, 1157 (Comp. St. 1913, §§ 1213, 1215)]), and that the Supreme Court of the United States had exclusive jurisdiction of the appeal, but there was no certificate of the trial court as required by section 238, showing that a question of jurisdiction was in issue, and where other questions of controlling importance were involved and considered by the Circuit Court of Appeals, that court had jurisdiction to entertain the appeal.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. ☞405.

Jurisdiction of Circuit Court of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Habeas corpus by Dan A. Ward and another against Thomas W Morgan, Warden of the United States Penitentiary at Leavenworth, Kan. From an order discharging the petitioners, the defendant appeals. Reversed, and case remanded, with direction to dismiss the petition and remand the prisoners.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl., and L. S. Harvey, Asst. U. S. Atty., of Kansas City, Kan. (Fred Robertson, U. S. Atty., of Topeka, Kan., on the brief), for appellant.

I. J. Ringolsky, of Kansas City, Mo. (Harry L. Jacobs, of Kansas City, Mo., on the brief), for appellees.

Before ADAMS and CARLAND, Circuit Judges, and AMIDON, District Judge.

ADAMS, Circuit Judge. This was an appeal from an order of the District Court in a habeas corpus proceeding discharging the appellees, Dan A. Ward and W. A. Greenwood, from imprisonment in the United States penitentiary at Leavenworth, Kan., of which the appellant, Morgan, was warden.

The appellees had been indicted in the District Court of the United States for the Western District of Oklahoma for the offense created by the act of January 30, 1897 (29 Stat. 506), had pleaded guilty to one of the counts of the indictment, and sentenced to pay a certain fine and be imprisoned in the penitentiary at Leavenworth for the

period of two years, and were afterwards committed to the prison in execution of the sentence. The count of the indictment upon which the plea of guilty was entered charged that the appellees—

"did unlawfully and feloniously introduce intoxicating liquor, to wit, whisky and beer, into and upon the south half of the southeast quarter of section one (1), township twenty-three (23) north, range eleven (11) east, of the Indian meridian, in said Osage county, said land being then and there an Indian allotment, to wit, the allotment of Ethel Evant, an Osage Indian, the title to the said allotment being then and there inalienable by the said allottee without the consent of the United States."

[1] After being incarcerated, the appellees filed in the court below their petition for a writ of habeas corpus, alleging that they were unlawfully restrained of their liberty by the appellant, the warden, for the reasons: First. Because the indictment was bad: (a) In that it did not charge that they introduced liquor into the Indian country, but only into a certain described Indian allotment; (b) in that it did not aver that the liquor was introduced into the allotment knowingly, and for several other reasons specified in the petition. And second. Because they were sentenced to imprisonment for a period of two years' time without any warrant of law authorizing the same, and therefore beyond the power of the court. Whether or not the indictment was bad for any of the reasons alleged in the petition for the writ cannot now be considered. The writ of habeas corpus cannot serve the purpose of a writ of error; if the indictment was bad, the appellees had an opportunity to challenge it, first in the trial court and afterwards, if necessary, by writ of error from this court, and, whether they availed themselves of either of these opportunities or not, they cannot now, according to familiar principles of practice, make use of the writ of habeas corpus for the purpose.

Was the judgment authorized by law? This raises the serious question in the case.

It is contended by the appellees that the act of 1897 provided for a minimum punishment of 60 days, but fixed no maximum limit at all, that as a result the minimum is also the maximum term of lawful imprisonment, and that because the District Court of Oklahoma imprisoned appellees for the period of two years, its judgment was in excess of its power, the sentence void, and did not warrant the detention of the appellees by the warden. The learned judge of the trial court adopted this view, and discharged the prisoners, holding that the judgment of the District Court of Oklahoma, in so far as it sentenced the appellees to imprisonment for any period in excess of 60 days, was void. An able argument was made by counsel for appellees in support of this ruling, and if it were true that Congress fixed no maximum penalty of imprisonment, but left the law with a minimum term of imprisonment fixed at 60 days, a serious question as to the power of the Oklahoma court to impose the sentence of imprisonment for the period of two years would be presented.

The warden contends that the act of 1897 must be read in connection with and be supplemented by the act of July 23, 1892, and as so read and supplemented makes adequate provision for a maximum

imprisonment of two years for the offense with which the appellees were charged. This contention will therefore be first considered.

[2] The act of July 23, 1892 (27 Stat. 260), prohibited the introduction of intoxicating liquors of any kind into the Indian country, and fixed the penalty for its violation at imprisonment for not more than two years and a fine of not more than $300. Afterwards Congress passed the act of 1897 (29 Stat. 506). This act also prohibited the introduction of intoxicating liquors of any kind into the Indian country, and specifically provided that the term "Indian country" should include any Indian allotment while the title to the same should be held in trust by the government, or while the same should remain inalienable by the allottee without the consent of the United States, and provided as a penalty for its violation a certain fine and imprisonment for not less than 60 days, specifying no maximum limit of imprisonment. The second section of this act provides as follows: "That so much of the act of July 23, 1892, as is inconsistent with the provisions of this act is hereby repealed." Both the act of 1892 and of 1897 contain similar provisions against the selling of intoxicants of any kind to Indians, but it is thought these provisions throw no light upon the question under present consideration, namely, whether the act of 1897, in view of the provisions of the act of 1892, empowered the District Court of Oklahoma to impose a penalty of imprisonment for a period of two years for introducing intoxicating liquor into an Indian allotment.

That the act of 1897 is an amendment of the act of 1892, although not so entitled, is now well settled and must be so treated (United States v. Wright, 229 U. S. 226, 230, 231, 33 Sup. Ct. 630, 57 L. Ed. 1160; Joplin Mercantile Co. et al. v. United States, 236 U. S. 531, 35 Sup. Ct. 291, 59 L. Ed. ——, just decided; Ammerman v. United States, 132 C. C. A. 470, 216 Fed. 326, 327), and that Congress did not intend to repeal the act of 1892 by the enactment of 1897 is clear. The latter act itself by necessary implication so declares. It provides that so much of the act of 1892 as is inconsistent with the provisions of this act is hereby repealed. This clearly means that the parts of the act of 1892 which are consistent with the act of 1897 still remain the law. The question, therefore, is this: Whether that part of the act of 1892 which provides a maximum punishment of two years is inconsistent with the provision of the act of 1897 which fixes the term of imprisonment for its violation at imprisonment for not less than 60 days with no maximum limit whatever specified. There is manifestly no actual or physical inconsistency between the two. Both can certainly stand in perfect harmony. The maximum imprisonment provided by the act of 1892 can in no sense be said to be inconsistent with the minimum imprisonment provided by the act of 1897, especially as no maximum limit of any kind is there specified.

If counsel for the appellees are correct in one proposition strenuously maintained by them, namely, that because the act of 1897 in itself fixed a minimum time of imprisonment and nothing more, the courts were vested with no discretion or power to fix any greater punishment than the minimum, or if this proposition were even de-

batable, it would seem that Congress ought, in some way, to have supplied this manifest failure of legislation to meet the reasonable demands of public justice. No one can seriously claim that Congress had done its full duty when it fixed the penalty for violating a law, intended to aid in the execution of a great public trust, at the short, inflexible term of imprisonment for not less than 60 days, with no discretion left, like that very generally lodged in the trial court in other legislation fixing penalties, to vary or enlarge it according to the circumstances of each case. We think Congress never intended to leave this important legislation so impotent in the way of enforcement. The act of 1892 provided a reasonable maximum term of imprisonment, and that act, as already seen, was repealed only so far as it was inconsistent with the provisions of the act of 1897. As the act of 1897 made no provision whatever for the maximum imprisonment, clearly such a provision found in the act of 1892 is not only not inconsistent with the provisions of the act of 1897, but is a very sensible provision for its reasonable enforcement, and was therefore not repealed by the act of 1897. Our own court, in the case of Ammerman v. United States, supra, in discussing this subject remarked as follows:

"It will be noticed that the punishment provided for a violation of the act of 1897 is imprisonment for not less than 60 days, * * * but provides for no maximum imprisonment or fine. In view of the fact that the act of 1897 is an amendment to the act of July 23, 1892, as was held by the Supreme Court in United States v. Wright, 229 U. S. 226, 230 (33 Sup. Ct. 630, 57 L. Ed. 1160), it may be assumed, although we do not deem it necessary to determine it in this case, that the maximum punishment provided for in the act of 1892 is still in force."

While these observations were obiter, they are in such perfect accord with our present views that we reproduce them with satisfaction.

Argument is made that the introduction of intoxicating liquor into an Indian allotment constituted no offense under the act of 1892; that it first became an offense upon the passage of the act of 1897, which first forbade its introduction into such allotment; that Congress could not have intended to make the penalty for violating the old act of 1892 applicable to an act first made penal by the act of 1897. If the premises assumed in this argument were correct, a serious question would be presented; but we cannot admit the premises. The act of 1892 made it a crime to introduce intoxicating liquor into Indian country. The act of June 30, 1834, as interpreted in the case of Bates v. Clark, 95 U. S. 204; 24 L. Ed. 471, and Evans v. Victor, 122 C. C. A. 531, 204 Fed. 361, provided a definite test for determining what Indian country is, and the Supreme Court in the case of Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201, after considering the act of 1834 and the opinion in the case of Bates v. Clark and stating, in substance, that 'they laid down a 'proper criterion for determining whether a given tract of land was Indian country or not, said: "It must be assumed that, in the act of 1897, Congress used the words 'Indian country' in the accepted sense." Accordingly, any land that came within the description of "Indian country" as so accepted was, by the express provisions of the act of 1897,

subject to its penalty. Owing, however, as suggested by counsel, to some difference of opinion which had arisen with respect to whether an Indian allotment was "Indian country," Congress doubtless made the declaration in that act that the term "Indian country" included Indian allotments, etc., to relieve the then existing uncertainty relative to that question.

In United States v. Pelican, 232 U. S. 442, 449, 34 Sup. Ct. 396, 399, 58 L. Ed. 676, the Supreme Court, treating of questions cognate to those now under consideration, said:

"The lands, which prior to the allotment undoubtedly formed part of the Indian country still retain during the trust period a distinctively Indian character, being devoted to Indian occupancy under the limitations imposed by the federal legislation. The explicit provision in the act of 1897 as to allotments we do not regard as pointing a distinction, but rather as emphasizing the intent of Congress in carrying out its policy with respect to allotments in severalty, where these have been accompanied with restrictions upon alienation or provision for trusteeship on the part of the government."

In view of these considerations and authorities we think it clear that Indian allotments, qualified as specified in the act of 1897, are Indian country, and that it was not intended by the last-mentioned act to create any new offense with respect to such allotments. Without the act of 1897 it would have been an offense under the act of 1892 to introduce liquor into an Indian allotment of the character specified in the act of 1897. That act was merely declaratory of the law as it existed before its passage. The case of appellees is therefore not strengthened by the argument that the court imposed a punishment provided for by the act of 1892 and for an offense first created by the act of 1897.

The conclusions already reached render unnecessary any consideration of the other question whether the act of 1897, in and of itself, afforded warrant for the sentence as imposed.

[3] Appellees have filed a motion to dismiss this appeal on the ground that this court is without jurisdiction to entertain it. It is argued that the jurisdiction of the trial court was in issue, and also that the case involved the construction or application of the Constitution of the United States within the meaning of the judiciary act of 1891 (see sections 236, 238, Revised Judicial Code), and that as a result the Supreme Court of the United States is vested with exclusive jurisdiction to hear and determine the appeal. We fail to find anywhere in this record that the jurisdiction of the trial court was ever questioned below, and certainly there is no certificate of the trial court showing that a question of jurisdiction was in issue as is required by section 238, supra. If the construction or application of the Constitution of the United States is in any way involved (which does not appear), other questions of controlling importance are involved, and have received consideration by us, as appears in the opinion. Such being the case, this court has jurisdiction to entertain the appeal. Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 407, 24 Sup. Ct. 376, 48 L. Ed. 496, and cases cited.

It results that the judgment of the District Court must be reversed, and the case remanded, with directions to dismiss the petition and

remand the prisoners, or if they are at large to take such measures as it, either by itself or in conjunction with the District Court of the Western District of Oklahoma, may lawfully take to secure their reincarceration.